# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KENNETH EUGENE SPEIGHT,
          Plaintiff,

  -vs-                              Civil Number 1:07-cv-481(RCL)

FEDERAL BUREAU OF PRISONS,
          Defendant.

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT

Defendant, Bureau of Prisons, have moved for summary judgment on grounds that it has released all disclosable data, and bases for withholding requested information. In fact, the Defendant only seeks partial summary judgment as the motion has made no reference to the facts of claim as to Count Two of the Amended Complaint.

As to the Defendant's claims with respect to Count One, summary judgment is foreclosed until the Plaintiff has opportunity to pursue discovery.  Discovery is necessary to determine whether actions which generated the records sought were in fact retaliatory, and the asserted purpose for compiling documents was pretextual.

### LEGAL STANDARD

On complaint, the district court has jurisdiction to enjoin an agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. 5 U.S.C. § 552(e)(4)(B).  "Any person making a request to any agency for records...shall be deemed to have exhausted his administrative

**RECEIVED**                    1

MAR 1 9 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

remedies...if the agency fails to comply with the applicable time provisions of this paragraph." 5 U.S.C. § 552(e)(6)(C).

On motion for summary judgment the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law. See Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 252 (1986).  In a FOIA case, an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested either has been produced or is wholly exempt from the Acts inspection requirement. Stolt-Nielsen Transp. Group LTD v. United States, 480 F. Supp. 2d 166, 174 (D.D.C. 2007) (internal cites omitted).

Requirement that agencies segregate and release disclosable information from that which is exempt grew out of congressional concern in 1974 over the agencies' sweeping application of exemptions up to that time. H.R. Rep. No. 93-876, at 7 (1974).  An agency is not entitled to withhold an entire document if only "portions" contain exempt information. Patterson v. IRS, 65 F.3d 832, 840 (7th Cir. 1995).

Freedom of Information Act exemptions are to be narrowly construed. United States Dep't of Justice v. Julian, 486 U.S. 1, 8 (1988); Wolfe v. C.I.A., 473 F.3d 370, 374 (D.C. Cir. 2007).  FOIA mandates broad disclosure of government records to the public. C.I.A. v. Sims, 471 U.S. 159, 166 (1985).  Whether an agency has improperly withheld records usually turns on whether one or more exemptions applied to the documents at issue. See Tax Analyst v. IRS, 492 U.S. 136, 151 (1989) ("agency records which do not fall within one of the exemp-

2

tions are improperly withheld").

Documents and records involved in an agencies decision-making process are protectible. Wolfe v. HHS, 839F.2d 768, 775 (D.C. Cir. 1988). Two fundamental requirements must be met for the deliberative process privilege to be invoked. First, the communication must be predecisional, i.e., antecedent to adoption of an agency policy. Second, the communication must be deliberative, i.e., a direct part of the deliberative process in that it makes recommendations or expresses opinions or legal or policy matters. Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975). Exemption 5 ordinarily does not apply to postdecisional documents. See Judicial Watch, Inc. v. HHS, 27 F. Supp. 2d 240, 245 (D.D.C. 1998) ("deliberative process privilege does not protect documents that merely state or explain agency decisions").

When an agency relies on an implied assurance of confidentiality, the court must determine whether the particular source spoke with an understanding that the communication would remain confidential. Dep't of Justice v. Landano, 508 U.S. 165, 179-80 (1993). The nature of the crime investigated and the informant's relation to it are the most important factors in determining whether implied confidentiality exists for information protected under the FOIA exemption for law enforcement information furnished by confidential sources.

**Vaughn Index**

"Agencies are typically permitted to meet [their] heavy burden by 'filing affidavits describing the materials withheld and the manner in which it falls within the exemption claimed.'" Canning v. U.S.

Dep't of Justice, 848 F. Supp. 1037, 1043 (D.D.C. 1994) quoting King v. U.S. Dep't of Justice, 830 F.2d 210, 217 (D.C. Cir. 1987). Such an index allows the trial court "to make a rational decision [about] whether the withheld material must be produced without actually viewing the documents themselves...[and] to produce a record that will render [its] decision capable of meaningful review on appeal." King, 830 F.2d at 219. One purpose of a Vaughn Index is to afford the FOIA requester a meaningful opportunity to contest withholding. Id. at 218. Also Long v. U.S. Dep't of Justice, 10 F. Supp. 2d 205, 209 (NDNY 1998) (Vaughn Index helps to create balance between the parties).

Where the agency, for good reason, does not furnish publicly the kind of detail required for a satisfactory Vaughn index, a district court may review the documents in camera. Maynard v. CIA, 986 F.2d 547, 557 (1st Cir. 1993). In camera affidavits are frequently utilized in cases when public description of responsive documents would compromise national security. Doyle v. FBI, 722 F.2d 554,556 (9th Cir. 1983); Pub. Educ. Ctr., Inc. v. DoD, 905 F. Supp. 19, 22 (D.D.C. 1995). Reliance on in camera examination has the effect of weakening the adversarial process somewhat, as it affords a plaintiff and his counsel no real input on the merits of a case. King, 830 F.2d at 218; Vaughn, 484 F.2d at 826; Cucci DEA, 871 F. supp. 508, 514 (D.D.C. 1994) ("An adequate Vaughn index facilitates the trial court's duty of ruling on the applicability of certain invoked FOIA exemptions, gives the requester as much information as possible that he may use to present his case to the trial court and thus enable the adversary system to operate").

4

In camera inspection of affidavit will not necessarily always be sufficient to determine validity of claim of privilege. Molerio v. FBI, 749 F.2d 815, 822 (D.C. Cir. 1984).

## Discovery

Discovery is the exception, not the rule, in FOIA cases. Judicial Watch, Inc. v. Exp.-Imp. Bank, 108 F. Supp. 2d 19, 25, (D.D.C. 2000). The major exception to this limited scope of discovery is when the plaintiff raises a sufficient question as to the agency's good faith in processing documents or any other respect. Tax Analysts v. IRS, 214 F.3d 179, 185 (D.C. Cir. 2000). In order to justify discovery once the agency has satisfied its burden, the plaintiff must make a show-ing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declaration, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate. Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994).

## Information Improperly Withheld

Information in sections entitled, "TYPE OF INCIDENT,"and "Inci-dent Summary," has been improperly withheld. Information as to what specific Bureau regulation was suspected of being violated must be disclosed since no pending or contemplated proceedings would be en-dangered by release. See Badran v. USDOJ, 652 F. Supp. 1437 (ND Ill 1987). Bureau regulations are a public record within which prohibit-ed inmate conduct is codified. 28 CFR § 541 et seq. The proscribed act(s) which was being investigated can not be confidential, it is published. If said investigation had produced any evidence that the

5

Plaintiff had committed the prohibited act, the act committed and
some information regarding the evidence would have to have been pre-
sented to the Plaintiff in the form of a disciplinary charge known as
an "incident report," which would have been a matter of "public re-
cord," and n<u>ot</u> confidential.  BOP regulation, Program Statement P.S.
5270.07 provides in relevant part:

> a. Incident Report
> "...when staff witnesses of has a reasonable
> belief that a violation of Bureau regulations
> has been committed by an inmate...staff shall
> prepare an Incident Report and promptly for-
> ward it to the appropriate Lieutenant."
>
> "The description of the incident should con-
> tain the details of the activity which is
> being reported. All facts about the incident
> which are known by the employee and which are
> not confidential should be recorded."

P.S. 5270.07, 28 CFR § 541. 14.

The claimed exemptions are not applicable because detention for in-
vestigation of possible violation of regulations is indication that,
had investigation determined that prohibited act had been committed,
the alleged offense and evidentiary facts would have to have been in-
cluded in charge and thereby disclosed.  Therefore, disclosure of the
violation being investigated could not be "confidential."  Violation
of BOP regulation does not equate with violation of criminal laws.
The regulation governing Administrative Detention distinguishes be-
tween "investigation for violation of Bureau regulations," and "in-
vestigation for a criminal act." 28 CFR § 541.22(a). (See Exhibit **A**,
Administrative Detention Order).

Information regarding the alleged prohibited investigated does
not qualify as deliberative, non-factual, pre-decisional memoranda,

6

nor would disclosure injure quality of agency decisions.

**Need For Confidentiality Improperly Applied**

The government is not entitled to a presumption that any source
from which it obtains information is a confidential source.  The court
must make such determination on a case-by-case basis. Billington v.
U.S. Dep't of Justice, 245 F. Supp. 2d 79 (D.D.C. 2003).  Under the
FOIA provision authorizing agencies to withhold identities of law en-
forcement personnel to protect life and physical safety of those per-
sons, a court will not assume that safety of law enforcement personnel
who are involved in investigation is endangered per se.  An agency
must make a more compelling showing that disclosure would endanger
safety of law enforcement personnel than just a bald assertion. See
Fiumara v. Higgins, 572 F. Supp. 1093 (D.N.H. 1983).  In this case,
deletion and redaction of parties' names or other identifying data
should suffice for both (b)(7)(C) and (b)(7)(F) purposes.

**Bad Faith Of Agency**

No "incident" occurred on April 5, 2004 in Unit 1-A, FCI Allen-
wood, involving the Plaintiff. See Declaration of Kenneth Eugene
Speight.  There was no incident report written by the Unit Officer,
or any other FCI Allenwood staff member, alleging to have witnessed
or to have had reason to believe that any prohibited act had been com-
mitted by the Plaintiff.  However, prior to that time, SIS had been
engaged in tampering with the Plaintiff's mail in a manner for which
there was no authority.  These same officers had engaged in conduct
presumably intended to intimidate or discourage the Plaintiff from
pursuing actions to expose and stop the unauthorized mail interfer-

7

ence. While the Plaintiff was detained under "investigation" for
possible violation of an undisclosable Bureau regulation, he was sub-
jected to a fraudulent disciplinary report to justify the detention.
BOP actors seized all of the Plaintiff's legal files and materials
for 50 days, but did not search the materials until after they re-
leased them to the Plaintiff. (See Exhibit **N**, Declaration of David
Barben). However, officials had justified the initial seizure, (des-
cribed as a "confiscation"), on the grounds that the "property [was]
being reviewed," and would be returned only upon completion of such
review. (See Exhibit **O**, Memorandum of Hattie Sims). BOP officials
have participated in activity to fabricate false criminal charges
against the Plaintiff. (See Declaration of Kenneth Speight). In the
"Conclusion and Recommendation" section of the SIS Report, Feltman
states there is no basis to support the confidential sources allega-
tions, thus, the matter was closed for lack of factual basis. There-
fore, the Defendant's current claim of the need to protect "potential
witnesses," lend a false implication that the matter is an "open" case
subject to prosecution as opposed to a closed investigation.

**Supporting Documentation**

The Plaintiff's FOIA request sought <u>all</u> documents in the "file."
The SIS Report lists "paperwork and forms...included." However,
these documents were not released and when expressly request speci-
fically, were still not released, nor has said express request been
acknowledged.

**Conclusion**

For the above reasons, the Plaintiff asserts that the Defendant

agency compiled the sought records for an improper purpose, and has acted in bad faith in denying release.  The Defendant can not circumvent exposure of un-constitutional behavior by invoking privilege of exemption from disclosure.  The public has a greater interest in insuring that the Defendant has not abused the authority or engaged in unlawful conduct in violation of rights or over-stepped authority or engaged in pretextual retaliatory activity.

WHEREFORE, the Plaintiff respectfully requests that the Defendant's motion for summary judgment be denied, or in the alternative, that said motion be held in abeyance until after discovery, or the Defendant provides the Plaintiff's with its <u>Vaughn</u> Index.

Dated March 12, 2008

Respectfully Presented,

Kenneth Eugene Speight
c/o P.O. Box 8000
Bradford, Pennsylvania
[16701]

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KENNETH EUGENE SPEIGHT,
             Plaintiff,

    -vs-                              Civil Number 1:07-cv-481(RCL)

FEDERAL BUREAU OF PRISONS,
             Defendant.

### DECLARATION OF KENNETH EUGENE SPEIGHT

    I, Kenneth Eugene Speight, hereby declare, attest, affirm and
say:

1.    I am over the age of twenty-one years, and am competent to make
this declaration.

2.    I have knowledge of the facts as set forth herein and if called
upon as a witness will testify to their veracity.

3.    On August 8, 2000, while imprisoned at Federal Corrections Insti-
tution (FCI), Ray Brook, New York, I was placed in segregation in
Special Housing Unit (SHU) pending investigation by Special Investi-
gation Supervisor (SIS) Michael Cross, of possible violation of insti-
tution rules.

4.    In response to Subsequent inquiry by Congressman John B. Larson,
FCI Ray Brook Warden, John Nash, and BOP NERO Director, David Rardin,
in separate letters, each stated that my detention had been at the in-
stance of the U.S. Attorney for the Northern District of New York.

5.    During my SHU detention, SIS Lt. Cross began the practice of
photocopying all of my out-going personal mail and maintaining said

1

copies in a file.  Periodically, Cross made copies of the letters-file and distributed them to the FBI and U.S. Attorney's office.

6.    I have not been able to determine any lawful authority for Cross' actions.

7.    SIS Cross, FBI agent Stephen F. Weishaupt, and other DOJ officials engaged in an elaborate scheme to fabricate evidence of criminal conduct for the purpose of indicting and prosecuting me in retaliation for my having filed commercial liens on certain federal officials in Connecticut.  The efforts of Cross and Weishaupt included bribing prisoners to falsely allege participation in a non-existent criminal conspiracy. (See Exhibit D, letter to United States Attorney Glenn T. Suddaby, incorporated by reference as if fully set forth here).

8.    Five prisoners have alleged they were offered bribe.  A sixth prisoner actually accepted the offer to give false testimony in exchange for time off his existing sentence, and did so.

9.    In March 2001, I was indicted, and in February 2002, was convicted after trial of conspiracy to commit mail fraud, mail fraud, and conspiracy to injure federal officers.

10.   In August 2002 I was transferred to FCI Allenwood, Pennsylvania, and within two months began to notice that my letters to home (Connecticut) were only arriving some seven to twelve days after I mailed them.

11.   I inquired with first, the FCI Allenwood Warden, and then, the SIS lieutenant, as to whether the practice begun at FCI Ray Brook regarding my mail was continuing.  Neither official would respond.

12.   In January 2003, I began acquiring evidence through admissions

2

of unit officers and mail-room staff which demonstrated that there
were "memos" directing unit officers not to process my mail according
to regulation, but instead, to divert it to SIS.

13.  I filed administrative remedy complaints regarding the treatment
of my personal mail.  The Warden responded that I was not under any
type of "mail-monitoring" as provided for by regulation.  However, my
letters were still being diverted to SIS for two to three days before
being released to the mail-room for mailing.

14.  In May 2003, during a routine institution "shakedown," Allenwood
officials "confiscated" all of my legal-papers.  Although, I had an
authorization from Unit Manager Wagner for the materials and the box
containing them, SIS Lt. Feltman had the property confiscated anyway.
When the legal materials were subsequently returned, I was required
to leave them in a "vault" next to the Unit Manager's office where I
could only have access at specified times under staff supervision.
(See Exhibit E, Response to BP-8, dated May 23, 2003).

15.  A new Unit Manager, Sims, made the determination that I would be
required to leave my legal materials in her vault.  She further stated
that she had been informed that I was "a paper-pushing inmate."  There-
after, Counselor Simmons warned me that, people would not want to
"help" me, if I continued to "file so much."  Several days later, Lt.
Feltman stopped me outside the metal-dector "shack" and stated that I
had "better start figuring-out who's on top and who's on bottom around
here."

16.  These events and statements did not deter me from continuing to
file administrative remedy complaints regarding the escalating harass-

3

ment.

17.  In January 2004, during a phone conversation, the mother of a
friend of mine stated that her son, who was in a federal prison in
New Jersey, told her he has been visited by federal agents who offer-
ed him an early release if he would be willing to make (false) alle-
gations about me which would assist an effort to fabricate new crimi-
nal charges.

18.  On April 5, 2004, I was detained in SHU pending investigation of
a violation of Bureau of regulations. All my property was seized.

19.  On April 19, 2004, I made FOIA request for information regarding
the investigation. (Exhibit **F**).  BOP failed/refused to respond.

20.  On June 2, 2004, SIS Lt. Feltman came to my SHU cell and stated,
"we're about through with you, somebody will be to see you later."

21.  Subsequently that day, I was presented with an incident report
alleging that I had improperly possessed legal papers belonging to
another prisoner. (Exhibit **G**, Incident Report of David Barben).

22.  The incident report was purportedly made by Intel. Off. David
Barben, who claimed to have been reviewing the inventory of my proper-
ty and found a court envelope with another prisoner's name containing
legal papers.

23.  I challenged this claim on the basis that there was no such list-
ing on my property inventory.  My property inventory was dated May 20,
2004.  The property had been released by SIS on May 24, 2004, and re-
viewed by both myself and the SHU Property Officer.  Thereafter, my
property was secured in the SHU Property Room.

24.  In response to my challenge, Barben asserted that he was actually

4

"inventorying" my property on June 2, when he found the items.  I
made FOIA request for copy of the inventory prepared by Barben, but
BOP has failed/refused to respond in any manner. (See Exhibit H).  I
argued that: 1) SIS had possession of my property for 50 days and al-
leged the detention of it was in order to "review" it; 2) the proper-
ty had been inventoried on May 20, 2004, according to the property
forms provided when SIS released it; 3) because the property had been
inventoried, there was no apparent reason for a subsequent SIS inven-
tory after the property was no longer in SIS possession; 4) Barben
could not have accessed the property for inventory on June 2, 2004
because the SHU property officer, Bedford, was on vacation for the
week.

25.  The BOP claimed that SIS had not searched or otherwise reviewed
my property during their 50-day detention of it, and therefore, after
it was released to me in SHU on May 24, 2004, it was determined there
was need on June 2, 2004, to conduct a search and inventory, during
which, the unauthorized items were found.

26.  I was found guilty of the prohibited act and sanctioned to 14
days disciplinary segregation.

27.  I was detained for a total of 84 days and released back to the
general population on June 28, 2004.  During the 84-day confinement,
I was never interviewed by SIS.  During my detention, SIS officers
interviewed another prisoner, John FUller, regarding me. (See Exhibit
I, Declaration of John Fuller).

28.  I filed a civil action in U.S. District Court in which I alleged
that, 1) SIS officers Lyons and Feltman, had engaged in improper

5

photocopying of my out-going personal mail, 2) I had filed a series
of administrative complaints regarding the matter, and 3) Lyons and
Feltman had retaliated by placing me in SHU under pretextual investi-
gation.

29.  In January 2005, Unit Manager Sims and Case Manager Foura enter-
ed false classification data on "Public Safety Factor Greatest Severi-
ty" to raise my custody level in order to transfer me.  On June 13,
2005, I was transferred to U.S. Penitentiary Allenwood.

30.  On July 8, 2005, Lyons and Feltman initially responded to my law
suit allegations by motion to dismiss or for summary judgment in
which they invoked qualified immunity, and claimed there had been
justifiable basis for detaining me.  Lyons and Feltman argued that,
"Plaintiff was placed in AD pending an investigation of his possible
violation of BOP regulations regarding the impermissible possession of
'anything unauthorized', i.e., another inmate's legal materials." (Ex-
hibit J, "Memorandum in Support" of Lyons' motion).

31.  In my opposition brief, I rebutted those claims by Lyons and
Feltman by pointing out that, the incident report charging me with
misconduct alleged that staff had only become aware of the violation
on June 2, 2004, 57 days after the detention began.

32.  On September 5, 2005, Lyons and Feltman filed a Reply brief in
which they changed their claim.  They argued that I had "mistakenly
aver[red] that the Defendants placed [me] in AD in order to investi-
gate possession of another prisoner's legal papers." (Exhibit K, Lyons
Reply).  They further asserted that I "was not placed in AD for in-
vestigation of possession of unauthorized items," and then referred

6

the court to documents submitted "in camera," which it was asserted,
established "there is no basis for [my] claim of retaliation." (Id.).

33.  On October 21, 2005, I made a FOIA request seeking disclosure of
"All files, reports, memorandums, records and other documentation
which constitute any 'report(s)' or 'record(s)' of any SIS investiga-
tion conducted by Lt. J. Lyons and/or Lt. B. Feltman during the time
period April 4, 2004 and June 2, 2004 with respect to [me]. Exhibit
B.

34.  The BOP released 4 of 6 pages claimed to be responsive but which
were redacted of virtually all information except my name. Exhibit **L**.

35.  On September 29, 2006, I filed formal administrative complaint
(BP-9) to correct the false public safety classification, and five
days later, I was transferred, redesignated to medium FCI McKean.  On
October 25, 2006, I received the BP-9 grievance in the mail.  A note
had been written on the front stating: "I wish to withdraw this re-
quest due to the matter being resolved by my unit team." Someone also
forged my signature. Exhibit **M**, BP-9.

36.  On November 9, 2006, I made FOIA request for all files and docu-
ments related to the BP-9 administrative remedy complaint.  The BOP
failed/refused to respond or acknowledge the request.  On Ferbaury 12,
2007, I made a follow-up request for the documentation.  The BOP
still did not respond. Exhibit **C**.

37.  I am not aware that any "incident" or otherwise, event involving
me, occurred on April 5, 2004.

38.  On Monday, April 5, 2004, I went to work at the Recreation Depart-
ment, and from there, went to the dining facility for lunch.  I left

the "chow-hall" and returned to my assigned housing unit, 1-A.  I was in my cell drafting a legal brief when, at approximately 1:00 p.m., a corrections officer whom I had never seen before entered the cell and ordered me to get my coat and accompany him.  I exited the cell and he locked the cell door.  He escorted me to the "Lieutenant's" office and stripped-searched me, and then escorted me to the SHU where I was held in AD for 74 days, and DS for another 10 days.

I, Kenneth Eugene Speight declare under penalty of perjury that the foregoing statement of facts is true, correct and complete to the best of my knowledge, understanding and belief, pursuant to 28 USC § 1746.

Dated: March 12, 2008

Kenneth Eugene Speight
c/o P.O. Box 8000
Bradford, Pensylvania
                [16701]

8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KENNETH EUGENE SPEIGHT,
          Plaintiff

     -vs-                              Civil Number 1:07-cv-481(RCL)

FEDERAL BUREAU OF PRISONS,
          Defendant.

### PROOF OF MAILING

I, Kenneth Eugene Speight, attest and affirm that a true and
correct copy of Plaintiff's Opposition to Defendant's Motion for
Summary Judgment, Declaration of Kenneth Eugene Speight, and Sup-
porting Exhibits were sent via first class mail March 14, 2008 by
presenting to corrections officials for process to the U. S. Postal
Service for mailing, to:

Wyneva Johnson, AUSA
555 4th Street, N.W.
Washington, D.C. 20530

                              _____
                              Kenneth Eugene Speight
                              c/o P.O. Box 8000
                              Bradford, Pennsylvania
                                        [16701]

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA


KENNETH EUGENE SPEIGHT,
          Plaintiff,


     -vs-                          Civil Number 1:07-cv-481(RCL)


FEDERAL BUREAU OF PRISONS,
          Defendant.

### INDEX TO EXHIBITS IN SUPPORT OF PLAINTIFF'S
### OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Exhibit **D**    Letter to Glenn T. Suddaby

Exhibit **E**    Response to BP-8 dated May 23, 2003

Exhibit **F**    April 2004 FOIA request re: SIS investigation

Exhibit **G**    Incident Report dated June 2, 2004

Exhibit **H**    FOIA request re: Property Inventory

Exhibit **I**    Declaration of John Fuller

Exhibit **J**    Brief in Support of J. Lyons' Motion

Exhibit **K**    Reply Brief of J. Lyons

Exhibit **L**    SIS Report

Exhibit **M**    BP-9 with fraudulent "withdrawal" note and forgery of
                 Plaintiff's signature

Exhibit **N**    Declaration of David Barben

Exhibit **O**    Memorandum of H. Sims, and Response of AW Holencik

Exhibit **C**    FOIA request subject of Count Two of Amended Complaint

November 9, 2006

Kenneth Eugene Speicht
c/o FCI McKean
P.O. Box 8000
Bradford, Pennsylvania
[16701]

Certified Mail # 7005 1160 0000 6981 5074

Wanda Hunt, Chief
FOIA/PA Section
Federal Bureau of Prisons
320 First Street, N.W
Washington, D.C. 20534

Re: FREEDOM OF INFORMATION ACT/PRIVACY ACT REQUEST

Dear Ms. Hunt:

This is a non-commercial request pursuant to the Freedom of
Information Act, 5 USC § 552, and the Privacy Act, 5 USC § 552a, for
disclosure of records in the custody of your "agency." Please provide
copies of the following:

1.    All Memoranda, or any Memorandum prepared by any USP Allenwood
staff regarding the "closure" of Administrative Remedy Control No. ID
#428661-F1;

If there are no documents responsive to this request, please so
indicate in your reply;

2.    All files, records, or other documentation related to Administra-
tive Remedy No. 428661-F1, filed with Administrative Remedy Coordinat-
or, Allenwood USP;

If there are no documents responsive to this request, please so
indicate in your reply.

With respect to any "exemption(s)" you may wish to claim,
y segregatable portion of a record after
hich is exempt, along with the legal
deletion.

on of your timely compliance.

Cordially yours,

Kenneth Eugene Speicht

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com®

SPEIGHT 12471-014 (A-B)

Postage   $  .39
Certified Fee   2.40
Return Receipt Fee
(Endorsement Required)
Restricted Delivery Fee
(Endorsement Required)
Total Postage & Fees   $2.79

Sent To   Wanda Hunt, FBOP
Street, Apt. No.;
or PO Box No.   320 First St. NW
City, State, ZIP+4   Washington, DC

*ЄKHIBIT C-2*



## Track/Confirm - Intranet Item Inquiry - Domestic

**Item: 7005 1160 0000 6981 5074**          **Date/Time Mailed: 11/15/2006 07:35**

**Destination**      **ZIP Code:** 20534          **City:** WASHINGTON        **State:** DC
**Origin**           **ZIP Code:** 16701-9998     **City:** BRADFORD          **State:** PA

**Class:** First Class

**Anticipated Delivery Date:** 11/17/2006

**Weight:** 0 lb(s) 1 oz(s)                   **Postage:** $0.39

**Firm Book ID:** 51P5 7730 4000 0003 7648

**Delv Rqmt:** Normal                         **PO Box?:** N

| Special Services | Associated Labels | Amount |
|---|---|---|
| CERTIFIED MAIL | 7005 1160 0000 6981 5074 | $2.40 |

| Event | Date/Time | Location | Scanner ID |
|---|---|---|---|
| DELIVERED | 11/20/2006 07:12 | WASHINGTON, DC 20534 | K795412 |
| | Firm Name: PRISONS 20534 R5 | | |
| | Recipient: 'S HORTON' | | |
| | Request Delivery Record | | |
| | View Delivery Signature and Address | | |
| NOTICE LEFT | 11/19/2006 07:46 | WASHINGTON, DC 20534 | P577304 |
| ARRIVAL AT UNIT | 11/19/2006 07:32 | WASHINGTON, DC 20022 | P577304 |
| ACCEPT OR PICKUP | 11/15/2006 07:35 | BRADFORD, PA 16701 | |

**Enter Request Type and Item Number:**

**Quick Search** ⦿      **Extensive Search** ○

Explanation of Quick and Extensive Searches

Submit

*Version 1.0*

Inquire on multiple items.

Go to the Product Tracking System Home Page.

*Exhibit* **C-3**

February 12, 2007                        Kenneth Eugene Speight
                                         c/o FCI McKean
                                         P.O. Box 8000
                                         Bradford, Pennsylvania
                                                    [16701]


Wanda Hunt, Chief
FOIA/PA Section
Federal Bureau of Prisons
320 First Street, N.W.
Washington, D.C. 20534

            Re: **FREEDOM OF INFORMATION ACT/PRIVACY ACT REQUEST**
                **(Second Request)**

Dear Ms. Hunt:

      This is s non-commercial request pursuant to the Freedom of
Information Act, 5 USC § 552, and the Privacy Act, 5 USC § 552a, for
disclosure of records in the custody of your "agency." Please pro-
vide copies of the following:

1.    All Memoranda, or any Memorandum prepared by any USP Allenwood
staff regarding the "closure" or "withdrawal" of Administrative
Remedy Control No. ID #428661-F1;

      If there are no documents responsive to this request, please so
      indicate in your reply;

2.    All files, records, or other documentation related to Admini-
strative Remedy Request No. 428661-F1, filed with Administrative
Remedy Coordinator, USP Allenwood, on or about September 29, 2006;

      If there are no documents responsive to this request. please so
      indicate in your reply.

      With respect to any "exemption(s)" you may wish to claim, please
provide any reasonably segregatable portion of a record after dele-
tion of the portion(s) which is exempt, along with the legal justi-
fication for each such deletion.

      Thank you in anticipation of your timely compliance.

                                    Cordially yours,


                                    Kenneth Eugene Speight


FOIA/PA, WHChFOISBOP-021207

EXHIBIT D

May 7, 2007                          Kenneth Eugene Speight
                                     c/o P.O. Box 8000
                                     Bradford, Pennsylvania
                                                [16701]


Certified Mail # **7005 0390 0000 7371 2842**


Glenn T. Suddaby,
United States Attorney
Northern District of New York
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

     Re: Information for the Grand Jury

Dear Mr. Suddaby:

     This correspondence is to formally notify you of specific facts
which evidence offenses against the criminal laws of the United
States.  As you are aware, § 3332(a) of Title 18 U.S.C., provides in
part:

          "It shall be the duty of each such grand jury impaneled
          within any judicial district to inquire into offenses
          against the criminal laws of the United States alleged
          to have been committed within that district... Any
          [United States] attorney receiving information concern-
          ing such an alleged offense from any other person shall,
          if requested by such other person, inform the grand jury
          of such alleged offense, the identity of such other per-
          son, and such attorney's action or recommendation."

     Therefore, I am requesting that you in form the grand jury of
the herein information concerning offense including perjury, suborn-
ation of perjury, witness-tampering, evidence-tampering, obstruction
of justice, bribery and fraud.

<u>Witness-tampering</u>
     Beginning on or about August 8, 2000, and continuing through
August 20, 2001, FBI Special Agent Stephen F. Weishaupt and BOP
Special Investigations Supervisor Lieutenant Michael J. Cross,
executed a plan to fabricate false evidence of a conspiracy.

     The methodology of the scheme involved placing selected prison-
ers at FCI Ray Brook in segregation Special Housing Unit under pur-
ported "investigation" of possible violation of "un-specified" pri-

GJComp-GTS-050707

                              1

son rules. These men would then be subjected to "interviews" during which they would be threatened or intimidated, but ultimately offered a bribe of possible time-off their sentence if they would be willing to say they were involved in a conspiracy with me. These tactics were employed so that, some prisoners were detained for only weeks, while some were detained for months for psychological effect, and others were detained, released and detained again, in a cycle of intimidation and coercion.

It might be worthwhile to remind the grand jury that, these were not tactics employed in an effort to obtain information which might thwart an attack and save lives, or even to get information about a common crime. This activity was engaged in an effort to induce individuals to lie. At least six (6) prisoners were subjected to this treatment. Four (4) of those prisoners made statements to Attorney Lisa A. Peebles and her investigator, to the effect that they were solicited to lie, first by threat and then by bribe, to falsely allege participation in a non-existent conspiracy so as to incriminate me.

On August 22, 2000, Agent Weishaupt and Lt. Cross threatened prisoner Fredrick Pierce with indictment, then offered a sentence reduction if Pierce would "assist in securing a conviction," by falsely alleging a conspiracy involving me.

On August 22, 2000, Weishaupt attempted to intimidate prisoner John Shomaker by threatening to disclose to the prison population that Shomaker was a pedophile, an accusation which could have seriously endangered Shomaker's life due to the general hostility and violence directed by other prisoners toward anyone with such a label.

On October 10, 2000, Cross offered Shomaker the possibility of sentence reduction in exchange for "assitance."

On November 22, 2000, Weishaupt offered prisoner Idris Cox the possibility of sentence reduction in exchange for alleging a conspiracy involving me.

On November 22, 2000, Weishaupt threatened prisoner Gary Dethlefs with indictment, then offered the possibility of sentence reduction if Dethlefs were willing to falsely allege a conspiracy involving me.

On August 20, 2001, AUSA Craig A. Benedict offered Cox a sentence reduction in exchange for falsely alleging a conspiracy involving me.

In March of 2002, when Attorney Peebles interviewed the prisoners at Ray Brook, they did not know that my trial was over. Cox told her he didn't think he would be willing to help me. Before the case went to trial, Lt. Cross conveyed a threat to those prisoners

GJComp-GTS-050707

2

that each one should remember, if I called him as a witness to testi-
fy, the prosecutor (Benedict) could still indict him.

It is unlawful to engage in conduct intended to influence a wit-
ness, persuade a witness to lie, influence the testimony of a person,
or induce them to agree to make false statements.

Bribery
On August 20, 2001, Benedict and Weishaupt together with Cross,
met and entered into written agreement with prisoner Luis Rodriguez.
Rodriguez agreed to assist Benedict in exchange for time off his
thirty-year sentence, to give false testimony of participating in an
alleged conspiracy with me.

Obstruction of justice, perjury, subornation of perjury
(before a grand jury)
On March 7, 2001, AUSA Craig Benedict knowingly presented per-
jured testimony and false evidence to a grand jury. Then Treasury
Agent, Michael Dwyer falsely alleged to the grand jury that, when he
and Agt Weishaupt searched my cell in SHU at Ray Brook, they found
"thousands" of documents in "multiple stacks," "three, four and five
feet high." This was not true, but in fact, not even possible. It
would be a violation of the fire-safety code, but more significantly,
and what the grand jury didn't know, I was in Special Housing Unit,
segregation, a.k.a. "the Hole." SHU is a restricted environment in
which, per BOP policy, prisoners are only allowed 12 cubic inches of
legal materials in their cell. A prisoner is only allowed one (1)
set of underwear, one pair of socks, etc., and cells are routinely
shaken-down to discover unauthorized items. Imagine that I could
somehow obscure, in an otherwise empty 8' by 10' cell, tens of thou-
sands of pages of paper. Also, AUSA Benedict knew that I was in
SHU. The BOP Northeast Regional Director, David Rardin, stated in a
letter responding to inquiry from Congressman John Larson's office
as to why I was in segregation that, my continued detention in SHU
was at behest of the U.S. Attorney for Northern District of New York.
That was Daniel French, but it was Craig Benedict's case, and I be-
lieve Benedict called the shots as he has claimed in letters and
court papers that he communicated with Ray Brook officials.

Dwyer falsely alleged he had knowledge based on "interviews"
with purported victims, when in fact, he had not interviewed anyone
and testified on cross-exam at trial that he didn't even know if
anyone had been interviewed by any other agent.

Benedict intentionally posed questions so as to elicit answers
from which incorrect inferences would invariably be drawn, and there-
by misled the grand jury to erroneous findings. One such example is
shown where, the grand jurors are misled to believe that I was in-
discriminately mailing phoney claims to unsuspecting individuals. A
grand juror asked: "Where does this gentleman get these peoples' ad-
dresses to mail them?" Dwyer responded: "we don't know yet, and

GJComp-GTS-050707

3

its somewhat troubling..." However, the fact is that, this whole
matter surrounds my filing commercial liens on the property of three
individuals. All correspondence to those individuals had been to
their respective offices at the U.S. Courthouse, at 450 Main Street,
in Hartford, CT. These had all been by certified mail, and Dwyer
claimed to have sorted all of the documents and attached the certi-
fied mail receipts and return green cards. Therefore, he should
have known that these were all sent to one address which was the
court. Certainly, Benedict knew since he had corresponded and co-
ordinated with the U.S. Attorney's office in Connecticut. Dwyer
also knowingly misrepresented documents and physically altered my
record so that it would appear to support his false allegations.

Obstruction of justice (deceptive influence on judge's decision)
    Benedict filed an indictment, a superseding indictment and a
second superseding indictment. Each successive indictment contain-
ed numerous allegations which I knew to be false and for which no
supporting evidence existed. On each occasion, I requested to in-
spect the evidence presented to the grand jury supporting such find-
ings. Each time Benedict failed to produce evidence, but rather,
changed the allegation in a succeeding indictment. I brought this
to the attention of the court.

    One specific matter involved allegations that I had "mailed"
certain documents, but when I challenged the claims the allegations
were changed in a successive indictment. Benedict responded in
papers submitted to the court on November 9, 2001 that, certain "doc-
uments obtained from [me] in the form of signed letters...may have
only been prepared..." and not mailed, so the indictment was changed
to reflect "prepared" said documents instead of "mailed" them. I
wrote to Benedict and requested to inspect the signed letters. Ben-
edict wrote to me on December 5, 2001: "Nice try Mr. Speight. The
indictment does not allege that you signed these documents. You know
well [the documents] were not in the form of letters...with signa-
ture line." This clearly shows that Benedict lied to the court
(about why he changed the indictment) for the purpose of influencing
its ruling on my motion which challenged the indictment.

    Benedict knowingly filed with the court a perjured affidavit
executed by Cross. On August 9, 2001, Cross executed a perjured
affidavit in which he falsely alleged that I sent to him a "Notice
of Default for $30,000,000.00." There never was such an event. This
is one of the allegations in the superseding indictment which was
changed from "mailed" to "prepared." However, if such a document
had only been "prepared" by me and obtained from me during an FBI
search, then why would Cross "swear" that I sent such a document to
him? In fact, how would he know of it, if I only "prepared" it and
had not "mailed" it to him? These were all lies by Benedict and
Cross intended to influence the court to believe Benedict's claim
that I posed a threat to BOP employees. Benedict had falsely claim-
ed in papers, and Cross falsely averred in his affidavit that, "num-

GJComp-GTS-050707

4

erous documents [had been] directed at various Federal BOP Correct-
ions officials" and "because of the sheer volume" they had not been
listed in the indictment. This was wholly false. There had been
only five documents to four BOP officials, and non were "demands
for money" as Benedict had falsely alleged.

These knowing misrepresentations, perjury and subornation of
perjury were definitely an "endeavor[] to influence...or impede the
due administration of justice," in violation of 18 USC § 1503.

Benedict willfully suppressed evidence, which he had a legal
and ethical duty to disclose, with intent to improperly influence
the outcome of proceedings (i.e. the due administration of justice)
through dishonesty and fraud, and knowingly invoked his status as
an officer of the court to deny the existence of the evidence so as
to cover-up his suppression, and to influence or impede the judge's
ruling on the question of whether he had suppressed evidence of not.

On February 1, 2002, at the pre-trial hearing, I requested that
Benedict produce all FBI 302 reports of interviews with anyone who
had made statements either about me or attributed to me. Benedict
assured the court that "all relevant material" would be made avail-
able, but no such material was produced. In a post-trial motion, I
alleged that Benedict had suppressed "Jencks" material by failing to
provide records of prior statements made by Rodriguez during inter-
views with Agt Weishaupt. In opposition papers filed March 12, 2002
Benedict asserted, "as an officer of the court," that, Weishaupt
"did not interview [the prisoners]" at Ray Brook. Benedict's aver-
ment implied that, because there had been no "interviews," by infer-
ence, there were no reports, and thus, no evidence had been suppres-
sed. This was wholly false and Benedict knew he was making a false
statement (which he invoked his oath as an officer of the court to
support).

Weishaupt interviewed prisoners at Ray Brook regarding me on
August 22, 2000, November 22, 2000, February 22, 2001, in July of
2001 and on August 20, 2001. He completed 302 reports of those in-
terviews and wrote letters to his superiors in Albany and to Bene-
dict regarding the same. I have obtained through the FOIA, redacted
copies of some of these 302 reports and letters. Therefore, there
is no question that Benedict perjured his oath, deceived the court,
and obstructed or impeded its administration of justice in adjudica-
ting an issue before it.

Obstruction of justice and perjury (before a trial jury)
On February 4, 2002, Dwyer made numerous knowing false repre-
sentations to the trial jury. Dwyer stated that, during a so-called
discovery conference on May 3, 2001, I stated that I would remove
the lien from Judge Thompson's property, "if he changed his verdict."
Aside from the fact that Judge Thompson never made or entered any
"verdict" regarding me, at the time of the May 3rd meeting Dwyer re-
ferenced, the lien with respect to Judge Thompson had been termi-

nated nearly six (6) months or more, and all parties knew that fact.
Dwyer not only knowingly lied during his trial testimony, but he
even admitted on cross-exam that he had deleted portions of docu-
ments.  In fact, Dwyer had removed pages, added un-related pages,
and completely altered some documents in order to make the evidence
appear to mean other than what it actually did.

Dwyer committed perjury during his trial testimony by alleging
that I made certain statements which I in fact did not.  Agent
Patrick Fracolla was wearing a recording device during that meeting.
Therefore, if Dwyer wants to claim he did not commit perjury, he
should prove his allegations by producing the tape recording.  This
evidence should be made available to the grand jury.

You may reasonably believe it necessary as part of identifying
me to the grand jury, to include the fact that I have filed a Civil
RICO action which names as defendants, the individuals who are named
herein.  You most certainly also must inform the grand jury that the
underlying events from which the herein allegations derive involved
a criminal prosecution directed against me and that I was found
guilty.  However, in so doing, I hope that you will be reminded, and
so will remind the grand jury that, the desire to prosecute me for
any alleged criminal activity in no way provided a basis or justifi-
cation for criminal conduct by the prosecutorial agents.  The grand
jury may also want to consider that, if I was so guilty of a crime,
why was it necessary for Benedict and company to engage in unlawful
conduct to make a case?

Please notify me of your intention regarding this request as to
when you intend to present this information to the grand jury.  I
sincerely appreciate your time and attention, and anxiously await
your reply.

                              Respectfully Presented,


                              Kenneth Eugene Speight



cc: Hon. John B. Larson, MC
    Hon. John Conyers, Jr., MC




                              6

ALM 1330.13C
Attachment 1    F-1

# INFORMAL RESOLUTION ATTEMPT

In accordance with Program Statement 1330.13, <u>Administrative Remedy Procedures for Inmates</u>. This form will serve as documentation by the respective staff member and his/her unit manager to indicate an informal attempt to resolve the complaint of the following inmate. Inmates are <u>NOT</u> to complete this form.

NAME: __SPEIGHT, Kenneth Eugene_____ REG. NO._____12471-014_____

DATE FORM INITIATED 05/22/2003_STAFF:____H. P. Sims _____ 1_____
        **Date**                     **Name**                    **Unit**

## A BP-229 (13) WILL NOT BE ACCEPTED WITHOUT THIS COMPLETED FORM ATTACHED

1. Nature of complaint (to be completed by staff):

____See_Attached_____

_____

_____

_____

2. I have read the complaint above as written by Unit Staff and agree it is accurate.

_____        23 May 2003
   **Inmate's Signature**                               **Date**

3. Staff Member Assigned to Respond by U/M: _____R. Reid, Correctional Counselor _____

4. Efforts Made to Resolve the Problem:

      Arrangements has been made for you to have an opportunity to review the confiscated legal material. At that time, you will determine which documents are needed for ongoing litigation. The remaining documents will be mailed to a designated address that you will provide.

5. Applicable Program Statement Used in this Informal Resolution Attempt:

PS 1315.07 Inmate Legal Activities      PS 5580.03 Inmate Personal Property

6. Inmate's Response to Informal Remedy Attempt: _____

_____

_____

Prepared by: ___R. Reid, CC_____

Reviewed by: _____

Original Returned to Inmate (Date): ___5/23/2003_____

19 April 2004

Kenneth Eugene Jewell
20910 Zno 2000
White Deer, Pennsylvania
[17887]

Certified Mail #: 7002 0510 0001 4575 8254

L. Lyons, SIS
FCI Allenwood, FSOC
P.O. Box 2000
White Deer, PA 17887

Re: FREEDOM OF INFORMATION ACT/PRIVACY ACT REQUEST

Dear Mr. Lyons:

This is a request pursuant to the Freedom of Information Act, 5 USC §552, and the Privacy Act, 5 USC §552a, for production and disclosure of documents within your custody, control, or which are accessible to you. Please provide the following:

1. Disclose the specific provisions and interpretations thereof, as required pursuant to 5 USC §552 (a)(2)(D) and (E), upon which you have based your determination that conduct of Kenneth Eugene Jewell, Reg. No. 12491-014, is ... within the scope of said Policy and interpretation as to associated "investigation" and/or administrative detention pending investigation, also including punishment disclosable pursuant to 5 USC §552 (a)(2)(B) and (C).

2. Disclose/produce for reviewing, pursuant to 5 USC §552a (d)(1), all files, including case-file number(s), records, memoranda, and/or other documentation which are a result of, cause, or in any manner related to any investigation of Kenneth Eugene Jewell, Reg. No. 12491-014, being processed by you or having been considered, occurring between July 2003 and April 19, 2004.

If there are no files responsive to this request, please so indicate in your written response.

If you wish to declare any exemptions, please provide any reasonable, segregable portion of a file, after deleting the portion which is exempt, along with the basis for any exemption.

As you are aware, 5 USC §552 (a)(6)(A)(i) requires that you respond within 10 days. Please comply in a timely manner.

[Certified mail receipt and return receipt form]

SENDER: COMPLETE THIS SECTION
L. Lyons, SIS
FCI Allenwood, FSOC
P.O. Box
White Deer, PA 17887

7002 0510 0001 4575 8254

Exhibit G

BP-S288.052 INCIDENT REPORT FORM
MAY 1994
U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

| 1. Name of Institution | FCI Allenwood | | |
|---|---|---|---|
| | | Incident Report Number | |

### Part I - Incident Report

| 2. Name of Inmate | 3. Register Number | 4. Date of Incident | 5. Time |
|---|---|---|---|
| Speight, Kenneth | 12471-014 | 6/2/04 | 9:40 a.m. |

| 6. Place of Incident | 7. Assignment | 8. Unit |
|---|---|---|
| SHU | Unassg | SHU |

| 9. Incident | Possession of Anything not Authorized | 10. Code | 305 |
|---|---|---|---|

| 11. Description of Incident | Date: | 6/2/04 | Time: | 9:40 am | Staff became aware of Incident |
|---|---|---|---|---|---|

On 6/2/04, at approx. 9:40 a.m., I was reviewing the inventory of property belonging to Inmate Speight, Kenneth #12471-014. During this review I found a green and white envelope containing legal correspondence and court documents from the State of Connecticut belonging to inmate Richards, Horace #13550-014, AKA Desmone Wolfe, who is currently housed at F.C.I. Three Rivers. These items are not authorized for retention by another inmate.

| 12. Signature of Reporting Employee | Date and Time | 13. Name and Title (Printed) |
|---|---|---|
| [signature] | 6/2/04 11:00 a.m. | D. Barben, Intelligence Officer |

| 14. Incident Report Delivered To Above Inmate By: | 15. Date Delivered | 16. Time Delivered |
|---|---|---|
| [signature] | 6/2/2004 | 7:45 pm |

### Part II - Committee Action

17. Comments Of The Inmate To The Unit Discipline Committee Regarding The Above Incident

| 18. A. It Is The Finding Of The Committee That You: | B. | ___ | The Committee Is Referring The Charge(s) To The DHO For Further Hearing. |
|---|---|---|---|
| ___ Committed The Following Prohibited Act. | | | |
| ___ Did Not Commit A Prohibited Act | | | |
| | C. | ___ | The Committee Advised The Inmate Of the Finding And Of The Right To File An Appeal Within 15 Calendar Days. |

19. Committee Decision is Based On The Following Information.

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed the prohibited act)

| 21. Date And Time Of Action | | (The UDC Chairman's Signature Next To |
|---|---|---|
| His Name Certifies Who Sat On the UDC And That The Completed Report Accurately Reflects The UDC Proceedings.) | | |

| Chairman (Typed Name/Signature) | Member (Typed Name) | Member (Typed Name) |
|---|---|---|

25 June 2004

Kenneth Eugene Speight
%P.O. Box 2000
White Deer, Pennsylvania
[17887]

7900 0590 0027 1130 1172

Cathie Hall
FBI Richmond Office
P.O. Box 2500
White Deer, Pennsylvania 17887

Re: Freedom of Information Act/Privacy Act Request

Dear Mr. Barbosa:

This is a request pursuant to the Freedom of Information Act, 5 U.S.C. 552, and the Privacy Act, 5 U.S.C. 552a, for records and documents within your control, or which are accessible to you. Please provide the following:

1. All files, records, reports, forms, and/or other documentation which constitutes the "inventory of property belonging to Inmate Speight, Kenneth # 1247-019, which "inventory" you were either "receiving" or making on "6-2-04".

2. All files, records, reports, forms, and/or other documentation which constitutes any "inventory of property belonging to Inmate Speight, Kenneth # 1247-019, which was either "received" by, or is in the possession of, Inmate Speight, Kenneth # 1247-019.

If there are reasonable anticipated costs, please provide me, in advance, any reasonable estimate of these costs, along with billing information for payment.

In the event that you deny any portion of this request, please provide the justification, along with the citation of statutory authority upon which you rely.

Please respond within 10 days, please comply in a timely manner.

Cordially,

Kenneth Eugene Speight

Kenneth Eugene Speight

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
Mr. Barbosa, Intelligence Officer
FBI Richmond Office
Federal Bureau of Prisons
P.O. Box 2500
White Deer, PA 17887

COMPLETE THIS SECTION ON DELIVERY
A. Signature
X [signature]          ☐ Agent   ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery
S. Speight                      6-20-04
D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)
7900 0590 0027 1130 1172

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1540

DG FOI A/PA-04-2304

Page 1

EXHIBIT I

In The United States District Court
for The Middle District of Pennsylvania

Kenneth Speight,
      Plaintiff
            v
Jim Lyons, et al.,

Civil No. 3 CV-05-0822
(~~Judge Kane~~) (~~magistrate Judge Smyser~~)
(Judge Conaboy)

Declaration of John Fuller

I, John Fuller, do declare and state as follows:

1. I am an inmate housed in USP Allenwood in Allenwood, Pennsylvania.

2. I was detained in SHU at FCI Allenwood in Allenwood, Pennsylvania from April 5, 2004 to July 20, 2004.

3. I was not informed as to why I was being detained. I was not given a detention order or an incident report.

4. I was not allowed access to my property while I was in SHU and my property was deprived I lost personal

021268-JAF-1

practice my religious faith, and hampered my ability to litigate a case I had in the Second Circuit at the time.

5. While in the SHU, both my in-coming and out-going mail was regularly delayed; sometimes weeks delayed.

6. In April of 2004 I began pursuing an Administrative Remedy (BP9).

7. I never had a three day or seven day review after being detained in SHU. I never had a thirty day hearing. I never had an SRO hearing, nor did I ever refuse one. I never had a psychological evaluation while in SHU, nor did any of the mental health staff visit me.

8. On May 5, 2004 I submitted a BP9. The Institution was scheduled to respond by May 13, 2004. As was required, the BP9 response I never received

021268-JAF-2

Direct to my property on May 27, 2004.

9. I shared a cell with inmate John McNair while in SHU. McNair had been detained in SHU since January 2004.

10. McNair informed me that while he had access to his property, he had never been given a detention order or told why he was being held. He never had an SHU hearing, and never refused one.

11. I suggested to McNair that he seek Administrative Remedy. McNair wrote a BP-8 (May 2004).

12. The next day Lt. Shepherd McNair and myself in the recreation cage and said to McNair, "Here's the fucking detention order you asked for."

13. I read the detention order. It was dated January 2004, and was witnessed by a staff member who was working in SHU that day.

021265-JAF-3

14. Three weeks later, after McNair's BP-8 was properly processed, Lt. Shepherd came to our cell door and politely said, "McNair, here's a copy of the detention order you requested. As far as the SHU thing goes, I see you guys every week," goes, I see you

15. The Lt. being an obviously busy man, must have forgotten that he gave McNair a copy of his detention order three weeks prior. The new "copy" was dated January 2004. However this "copy" was witnessed by a different officer than the last. This took place on June 2, 2004.

16. In May of 2004 I was interviewed by SIS Lts. Lyons and Fellman.

17. I had hoped this interview would shed light on why I was being detained, but instead Lt. Lyons asked me a list of questions about the [illegible] [illegible] [illegible] tonight.

021265-JAF-4

M-5

18. Lyons and Feltman asked me about Kenneth Speights political affiliations. They asked me to explain the nature of the relationship between Speight and myself.

19. Lyons and Feltman asked me about a Constitutional Law class that Speight taught. They asked if there was a "class after the class."

20. Lyons and Feltman wanted to know what was taught in class.

I declare that the foregoing is true and correct and is given under penalty of perjury persuant to 28 U.S.C§1746.

John A. Fuller
82830-054
USP Allenwood

DATE July 25, 2004

021268-JAF-5

EXHIBIT J

TAM:JJC:mkf

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KENNETH EUGENE SPEIGHT,** | : | **CIVIL NO. 3:CV-05-0322** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Conaboy, J.)** |
| | : | **(Smyser, M.J.)** |
| **J. LYONS, et al.** | : | |
| **Defendants** | : | **Filed Electronically** |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

THOMAS A. MARINO
United States Attorney

s/ Jennifer J. Clark
JENNIFER J. CLARK
Assistant United States Attorney
PA 82294
MICHELLE K. FRANTZ
Paralegal Specialist
311 Federal Building
235 North Washington Avenue
Scranton, PA 18501
Telephone: 570-348-2800
Facsimile: 570-348-2830

Date: July 8, 2005

On May 22, 2003, a mass cell search was completed by institution staff at FCI Allenwood in Housing Unit 1A. See Ex. 2 at ¶ 5. Records fail to show that any of Speight's legal materials were confiscated during the mass cell search. See Ex. 2 at ¶ 6. However, on May 23, 2003, Unit Manager Sims provided a memorandum to the Housing Unit Officers regarding Speight's legal property. See Ex. 1 at 12. Due to the excessive amount of Speight's legal property and his proven need to access these materials, Speight was permitted to retain a box in excess of the allotted size in which to maintain his legal documents. See id. at ¶ 22.

## C.    Speight's SHU Placement/Confiscation of Property

On April 5, 2004, Speight was placed in the Special Housing Unit (SHU) pending an investigation.[3] See id. at 14. His personal property was packed, stored, and secured in the SHU. Id. at 16-17. On this same date, at approximately 2:00 p.m., Speight was given a copy of the administrative detention order. Id. at 14.

---

[3] In accordance with P.S. 5270.07, Inmate Discipline and Special Housing Units, the Warden or designee may place an inmate in administrative detention when the inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates, or to the security or orderly running of the institution and when the inmate is pending a hearing for a violation of BOP regulations; pending an investigation of a violation, pending investigation or trial for a criminal act; pending a transfer; protection or when placing an inmate in general population after serving time in disciplinary segregation is not prudent. See Ex. 1 at 35-41.

Moreover, the summary judgment evidence clearly establishes the reason for Speight's placement in AD: Plaintiff was placed in AD pending an investigation of his possible violation of BOP regulations regarding the impermissible possession of "anything unauthorized", *i.e.*, another inmate's legal materials. Speight's retaliation claim therefore fails for insufficiency of pleading, and judgment must be entered in favor of Defendants Lyons and Feltman on count I since claims of retaliation which are supported solely by speculation are insufficient to defeat a factually based motion for summary judgment. See Dennis, supra.

## G.    Access to the Courts and Freedom of Association

In counts II, III, V, X, XI and XII, Speight avers that his First Amendment rights to free association, expression and access to the courts were infringed upon by Defendants by the delay in processing and monitoring his outgoing mail and confiscation of his legal materials. Speight fails to state a viable interference with his access to the courts claim, however, for several reasons, mandating dismissal of those claims.

In Bounds v. Smith, 430 U.S. 817 (1977), the Supreme Court recognized that prisoners have a First Amendment right of access to the courts. In Lewis v. Casey, 518 U.S. 343 (1996), the Supreme Court clarified the parameters of one's right of access to the courts. Specifically, the Supreme Court held that the constitutional right

26

TAM:JJC:mkf

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KENNETH EUGENE SPEIGHT,** | : | **CIVIL NO. 3:CV-05-0322** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Conaboy, J.)** |
| | : | **(Smyser, M.J.)** |
| **J. LYONS, et al.** | : | |
| **Defendants** | : | **Filed Electronically** |

## BRIEF IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

NOW COME Defendants, by and through their counsel, Thomas A. Marino, United States Attorney for the Middle District of Pennsylvania, and Jennifer J. Clark, Assistant United States Attorney, who reply to Plaintiff's opposition to Defendants' Motion to Dismiss and for Summary Judgment, in accordance with Local Rule 7.7, as follows.

In his opposition brief, Plaintiff raises the following arguments: (1) that Plaintiff has exhausted his administrative remedies with regard to counts VII, XIII, and XV, has been deemed to have exhausted with regard to count XVI, and that count X is not subject to the exhaustion requirement; (2) that Defendants handled his mail

Second, Speight argues that Defendants have violated his First Amendment rights by handling his mail in a manner inconsistent with BOP regulations and program statements. See Doc. 53 at 24. Specifically, Speight claims:

> the Defendants "processed" Plaintiff's mail outside the scope of their published regulations by, photocopying and maintaining a file of copies of all Plaintiff's personal outgoing letters, and routinely disclosed copies of Plaintiff's personal out-going letters to other agencies or individuals. The Defendants also detained certain of Plaintiff's letters and never mailed them.

See id. at 25. However, as Speight has failed to provide support for these bald assertions, his claim of a First Amendment violation should be dismissed.

Third, Speight asserts that Defendants placed him in AD in retaliation for his filing administrative grievances regarding alleged improper actions with his outgoing correspondence. See Doc. 53 at 26-27. As previously stated, Speight was placed in AD "pending investigation of a violation of Bureau regulations." Ex. 1 at 14. Speight mistakenly avers that Defendants placed him in AD in order to investigate possession of another prisoner's legal papers. See Doc. 53 at 26. Although during his stay in AD, Speight was charged with, and found guilty of, possession of anything not authorized (i.e., another inmate's legal documents), he was not placed in AD for investigation of possession of unauthorized items. See Ex. 10 and Lyons Decl. at 3

(both submitted *in camera*[2]).  Therefore, as previously argued, there is no basis for Speight's claim of retaliation.

Fourth, Speight maintains that Defendants' confiscation of his personal property, including his legal papers, caused him to miss deadlines in his case for petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255. See Doc. 53 at 28. However, a review of the docket in that case shows that Speight appeared to meet each of his deadlines, and that no adverse consequences befell him for filing any documents out of time. See, e.g., Ex. 11 (Docket Report) at 2-3.  Thus, despite his contentions to the contrary, Defendants did not deprive Speight of his access to the Courts, nor did he suffer any actual injury as a result of his alleged denial of access to the Courts. See Lewis v. Casey, 518 U.S. 343 (1996); Bounds v. Smith, 430 U.S. 817 (1977).

Fifth, Speight asserts that his detention in AD violated his due process rights. In particular, Speight claims that there were no periodic reviews during his detention, and that he was denied access to any of his property, including personal hygiene items, for a period of approximately fifty (50) days. See Doc. 53 at 28-29. However,

---

[2] Because the information contained in the Special Investigative Supervisor's report and its attachments could potentially threaten the security of staff, inmates, and the institution, this document has been submitted for an *in camera* review only.

6

"D.O.J. SENSITIVE"            "F.O.I. EXEMPT"                    PAGE 1 OF 6

EXHIBIT L

UNITED STATES GOVERNMENT
# MEMORANDUM
F.C.I. ALLENWOOD, PA.

**DATE:**  August 10, 2004

**REPLY TO
ATTN. OF:**  B. Feltman, Lieutenant
Special Investigative Supervisor

**SUBJECT:**  S.I.S. Investigation

**REGARDING:**  Inmate Speight, Kenneth (Register Number 12471-014)

**TO:**  T. Burns, Captain
Joseph A. McCluskey, Acting Associate Warden (Programs)
S. A. Holencik, Acting Warden

**TYPE OF
INCIDENT:**  (b)(5), (b)(7)(C)

**DATE OF
INCIDENT:**  April 5, 2004

**LOCATION
OF INCIDENT:**  Unit 1-A

**S.I.S. CASE #:**  04-059

**STAFF
INVOLVED:**  B. Feltman, S.I.S. Lieutenant

Attached is the S.I.S. Investigation pertaining to the above incident at FCI Allenwood.

"D.O.J. SENSITIVE"            "F.O.I. EXEMPT"              "D.O.J. SENSITIVE"

S.I.S. Investigation

(b)(2) (j)(2)(c)

**Inmate Speight, Kenneth (Register Number 12471-014)**

**Incident Summary**

(b)(5), (b)(6) (b)(7)(c)

(b)(7)(D), (b)(7)(F)

**Inmate Profile**

Inmate Speight is a 53-year-old inmate, serving a 105-month sentence for *Possession of a Firearm with an Obliterated Serial Number and Conspiracy to Commit Mail Fraud and Injury an Officer of the United States*. He is a medium security, in custody inmate with a projected release date of July 5, 2008. Inmate Speight has no detainer. He has a CIMS assignment of separation.

**S.I.S. Investigation**

(b)(5)  (b)(7)(E)

**Inmate Speight, Kenneth (Register Number 12471-014)**

**Conclusion and Recommendation**



At this time, there appears to be no information to substantiate his claims. It is recommended that inmate Speight be returned to general population to continue his programming. It is also recommended that inmate Speight no longer be assigned to work in the recreation department.

**Supporting Documentation**

The following paperwork and forms are included in Case Number 04-059:

- Administrative Detention Order on Speight

- Sentry Information and AIMS Global Search on Speight

- (b)(6)(7)(C) (b)(7)(D) (b)(7)(F)

- Inmate Investigative File Checklist

"D.O.J. SENSITIVE"          "F.O.I. EXEMPT"

S.I.S. Investigation

(b)(5), (b)(7)(E)

__Inmate Speight, Kenneth (Register Number 12471-014)__

__End of Report__

"D.O.J. SENSITIVE"          "F.O.I. EXEMPT"          "D.O.J. SENSITIVE"

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: __Kenneth Eugene Speight__    __12471-014__    __1-A__    __usp Allenwood__
　　　LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A- INMATE REQUEST**  All attachments, "Informal Resolution Form," dated 9-6-06, and "Informal Resolution Request, dated July 28, 2006, are incorporated by reference as fully set forth here.  The informal reply by staff is non-re- spnsive as to the correction of my custody level.  No explanation is provided for why or how my custody classification was changed from +6 to +18.  Addi- tionally, the current offense severity should not be "MODERATE".  There is no justification for such designation.  Please provide the factual and legal bases for these determinations. And, make the appropriate adjustsments to reflect my classification prior to infusion of false or inaccurate informa- tion to my file.

__23 September 2006__    _____
DATE    SIGNATURE OF REQUESTER

**Part B- RESPONSE**

10/2/06

I WISH TO WITHDRAW THIS ADMIN REMEDY, DUE TO MY ISSUE BEING RESOLVED BY MY UNIT TEAM

#12471-014

_____    _____
DATE    WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE    CASE NUMBER: __428061-F1__

CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____    _____    _____    _____
　　　LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____    _____
DATE    RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN    Printed on Recycled Paper    BP-229(13)
APRIL 1982



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KENNETH SPEIGHT,              :      Civil No. 3:CV-05-0322
                              :
        Plaintiff,            :
                              :
        v.                    :
                              :
JIM LYONS, et al.,            :
                              :
        Defendants.           :

## DECLARATION OF DAVID BARBEN

I, David Barben, do declare and state as follows:

1.   I am an Intelligence Officer employed by the United States
     Department of Justice, Federal Bureau of Prisons (BOP), and
     assigned to the Federal Correctional Institution in
     Allenwood, Pennsylvania (FCI Allenwood).

2.   As an Intelligence Officer in the Special Investigative
     Supervisor's Department ("SIS"), my primary responsibilities
     include investigating criminal and other allegations of
     serious misconduct occurring at FCI Allenwood.  Furthermore,
     I have access to records maintained by FCI Allenwood and its
     staff in the ordinary course of business.

3.   I have reviewed the Complaint filed by the Plaintiff, inmate
     Kenneth Speight, federal register number 12471-014, which he
     essentially alleges that I falsified an incident report and

statements regarding his personal property.  Furthermore, Speight states that I failed to respond to his FOIA requests.

4.    On April 5, 2004, Speight was placed in the Special Housing Unit ("SHU") pending an SIS investigation.  See Albert Declaration, Exhibit 1 at 13 - 14.

5.    On this same date, his property was packed and secured by the Unit Officer and brought to the SIS Office, where it was secured until inventoried.

6.    On May 20, 2004, I inventoried Speight's personal property. As noted on Speight's personal property forms, he was in possession of one (1) box of legal materials, one (1) box of personal papers, and one (1) envelope of personal papers. See Albert Declaration, Exhibit 1 at 15 - 17.

7.    During that inventory, no property was confiscated from Speight.

8.    On May 24, 2004, Speight's property was taken from the SIS Office to the SHU for distribution to Speight.  Speight signed and attested for his property on May 24, 2004, noting

2

that "documents and papers" were missing from his property.

9. Due to the number of cases SIS had pending, SIS staff were unable to inventory Speight's personal property any sooner than May 20, 2004.

10. Due to the serious nature of the investigation, as permitted, on June 2, 2004, I proceeded to review Speight's personal property in the SHU.

11. During this review, I discovered that Speight had another inmate's legal materials included within his personal property.  I wrote an incident report charging Speight with possession of anything not authorized in violation of code 305.  See Albert Declaration, Exhibit 1 at 25.

12. On June 28, 2004, Speight was released to general population.

13. Insofar as to responding to FOIA requests, this is not completed on a local level.  The inmate must submit his request through the FOIA division.

3

I declare that the foregoing is true and correct and is given under penalty of perjury pursuant to 28 U.S.C. §1746.

David Barben
Intelligence Officer
FCI Allenwood

8-31-05
Date

4

UNITED STATES GOVERNMENT

# MEMORANDUM

## FEDERAL CORRECTIONAL INSTITUTION
### ALLENWOOD, PA.

DATE      : April 27, 2004.

REPLY TO
ATTN. OF: H. P. Sims, Unit Manager 1

SUBJECT : Inmate Request to Staff

TO        : SPEIGHT, Kenneth Eugene
             Reg. No. 12471-014


This response is in reference to your Request to Staff dated
April 22, 2004.  Your unit team contacted the Institution legal
department and SIS office regarding the concerns you raised in
that request.  You were placed in the Special Housing Unit
pending the outcome of an investigation.  Your personal property
was confiscated and is being reviewed by the SIS office.  The SIS
office indicated that your property will be return upon the
completion of the review.  The letter you provided does not
indicate that you have a deadline to file documents in court.

In addition, please find attached the letter you provided on
April 26, 2004.  I trust this addresses all of your concerns.

EXHIBIT
5-1-04  O-2

U.S. DEPARTMENT OF JUSTICE                    REQUEST FOR ADMINISTRATIVE REMEDY
Federal Bureau of Prisons

_Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse._

| From: | Kenneth Eugene Speight | 12471-014 | 1-A | ACM |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST**  This is a Complaint of unjustified detention in SHU and unlawful confiscation of property. I have been detained since April 5, 2004. I have not been provided any Administrative Detention Order as required by 28 CFR §541.22(b), and it is well past 24 hours since placement. I have been detained over 30 days and have not been presented at any SRO hearing nor provided any written finding as required by 28 CFR §541.22(c). Additionally, I have not been provided with any "personal property," although §541.22(d) makes provision for such, and the custom and practice of this institution clearly affords inmates the privilege of possessing some items of personal property. SIS justifies detaining my property purportedly to "review" it. A 30-day review of my personal hygiene items is unreasonable. All of my legal papers and files have been detained, in total disregard of the impediment such interference with on-going litigation poses. SIS has asserted that I have not shown that I have "a deadline to file documents in Court," as a justification to continue

5 May 2004                                          w/ full prejudice/
_____                          Kenneth Speight  © 2004
DATE                                                SIGNATURE OF REQUESTER

**Part B– RESPONSE**

This is in response to your Request for Administrative Remedy dated May 5, 2004, in which you are claiming you were unjustly placed in the Special Housing Unit and your property was unlawfully confiscated.

An inquiry into your concerns revealed you were placed in the Special Housing Unit on April 5, 2004, for an SIS investigation.  As part of the SIS investigation, your property was confiscated and reviewed by the SIS staff.  Upon completion of the SIS review, your property was presented to you  for your review on May 24, 2004.  Furthermore, our records indicate you have received your Administrative Detention Order as well as copies of your 30 day reviews.

I trust this response will address your concerns regarding your placement in the Special Housing Unit and your property concerns.

June 24, 2004                              S. A. Holencik, Acting Warden
_____                         _____
DATE                                      WARDEN OR REGIONAL DIRECTOR

_If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response._

**ORIGINAL: RETURN TO INMATE**                    CASE NUMBER: _____
_____
                                                  CASE NUMBER:  337256-F1

**Part C– RECEIPT**
Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.      UNIT      INSTITUTION

SUBJECT: 6/9/04
_____
DATE                                      RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN                                                    BP-229(13)
          Previous editions not usable                    APRIL 1982